Filed 7/9/14  P. v. Chavira CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>CARLOS CHAVIRA,<br><br>　　　　Defendant and Appellant. | B247069<br><br>(Los Angeles County<br> Super. Ct. No. KA097173) |

APPEAL from the judgment of the Superior Court of Los Angeles County. Bruce F. Marrs, Judge.  Affirmed in part, reversed in part and remanded with directions.

Kimberly Howland Meyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Carlos Chavira appeals his conviction by jury on two drug offenses and two offenses related to the possession of a "flash bang" device. Defendant contends evidentiary error and instructional errors require reversal of counts 1, 2 and 3. Defendant also argues that statutory amendments passed during the pendency of this appeal warrant reversal of count 4. Respondent concedes defendant's convictions on counts 3 and 4 should be reversed, but argues the balance of the judgment of conviction is properly affirmed. We conclude instructional error requires reversal of count 3, and that statutory amendments warrant reversal of count 4. We otherwise affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In March 2012, deputies with the Los Angeles County Sheriff's Department were conducting surveillance of defendant's home in La Puente before executing a search warrant for the home. While the deputies were observing the home, defendant came outside and got into a Lincoln Navigator and drove off. One of the deputies followed defendant and pulled him over a short distance away. Deputy Michael Gonzalez advised defendant of the circumstances surrounding the warrant, and read him his *Miranda*[1] rights. Defendant agreed to speak with Deputy Gonzalez.

When asked whether he had any contraband at his home, defendant told the deputies there were small quantities of cocaine and methamphetamine in a safe in the dresser of his bedroom, a diversionary device (also known as a "flash bang") in the top dresser drawer, a handgun in a separate safe in the bedroom, and a shotgun, rifle, ammunition and several expended AT4 casings in a large safe in a shed in the backyard. Defendant gave the deputies the combination to access one safe and explained where to find the keys for the others. During the search of defendant's home pursuant to the warrant, those items were located as defendant had described, plus some additional ammunition, numerous plastic baggies (some containing narcotics residue), and four digital scales.

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

2

Defendant's Lincoln Navigator was also searched and a baggie containing cocaine, in excess of three grams, was discovered hidden in a roof vent of the vehicle. The cocaine located in the vehicle had an approximate "street value" of $200 to $400.

Defendant was charged by information with possession for sale of cocaine (Health & Saf. Code, § 11351; count 1), possession of a destructive device (Pen. Code, § 18710, subd. (a); count 2), possession of an explosive (Health & Saf. Code, § 12305; count 3), and transportation of cocaine (Health & Saf. Code, § 11352, subd. (a); count 4). Defendant pled not guilty.

At trial, testimony was received as to the nature of the "flash bang" device found in defendant's possession. Detective Robert Harris, assigned to the arson and explosives detail of the Los Angeles County Sheriff's Department, testified he collected the flash bang from defendant's home and detonated it at a sheriff's department disposal site. A videotape of the detonation was played for the jury.

Detective Harris stated a flash bang device can be dangerous, and "produces a huge explosion when it detonates and a bright flash of light." He explained that if held in the hand too long after pulling the pin to activate the device, it could cause damage to the hand, including loss of fingers, and could damage one's hearing. On cross-examination, Detective Harris conceded a flash bang is considered a nonlethal, nonshrapnel producing device.

Kent Crawley, an explosive ordinance disposal officer with the Marine Corps Air Station at Miramar, also testified. He described a flash bang device as a "diversion charge" that is used for tactical purposes. It detonates, emitting heat and gases and producing light and sound, but is not intended to cause injuries if used properly. Like Detective Harris, Mr. Crawley explained that if held too long after activation, a flash bang could take "fingers off." Mr. Crawley also explained the AT4 casings found in defendant's shed were just the empty or "inert" tubes remaining after the firing of an AT4, which is a military device.

Using a photograph as an aid for the jury, Mr. Crawley explained the process of detonation for a flash bang device: "[T]he top section here from the white band up is the

3

fuse itself. And this is the actual body of the grenade. This is like a foam body. The fuse is made out of plastic. The pin is pulled, grenade is thrown. About 1.4 seconds after it's thrown, there's a charge that actually kicks the fuse off. The reason it does that is to keep the fuse from becoming frag when the actual grenade explodes. The fuse kicks off. About 800 milliseconds later, the actual foam body with the explosives detonates. And that's what makes the flash and the noise and the light."

On cross-examination, Mr. Crawley explained that a flash bang device does not contain the "same explosives" as "a high explosive grenade, [or] fragmentation grenade. But it has the same fusing type as a high explosive grenade." He conceded a high explosive grenade causes more damage.

After the prosecution rested, defense counsel advised that defendant would be testifying. The prosecution sought a ruling from the court allowing the admission of defendant's prior misdemeanor conviction for carrying a loaded firearm (Pen. Code, § 12031).[2] The court denied the request.

During direct examination, defendant denied being a drug dealer, but admitted he had previously used drugs, mostly recreationally. He denied any knowledge of the cocaine found inside the air vent of his Lincoln Navigator. As for the flash bang device, defendant explained he had served two tours of duty in Iraq from 2005 through 2007, and shipped home two foot lockers of personal items when he received orders to return home. He said he had not intended to pack a flash bang, but a couple of weeks before the March 2012 search of his home, defendant discovered he had inadvertently done so when he looked through one of his foot lockers trying to find a hydration pack to use for a hiking trip. He called a cousin, still on active duty with the military, to arrange for him to take it back to his base, but he had not yet had the time to meet with his cousin when the search

---

[2]     Penal Code section 12031 was repealed effective January 1, 2012, and reenacted without substantive change as section 25850. (Stats. 2010, ch. 711, §§ 4, 6.) We will refer to the statute as section 12031 to be consistent with the parties' briefs and the record.

4

occurred. Defendant's cousin testified and confirmed receiving a call from defendant around March 4, explaining he had discovered the flash bang and asking if he could turn it in to his base.

Defendant explained that flash bang devices were used in combat for tactical reasons, for instance, when under fire from a particular building. The flash bang is thrown inside to "stun" but not hurt any individuals inside, and to create a diversion.

Before starting his cross-examination, the prosecutor, outside the presence of the jury, asked the court to reconsider its ruling denying the use of defendant's prior misdemeanor conviction as impeachment on the grounds defense counsel had repeatedly solicited responses from defendant that he was being completely honest with the jury about not being a drug dealer and his version of events generally. After allowing argument on the issue, the court granted the prosecutor's request, finding defendant's prior conviction for carrying a loaded firearm did bear on moral turpitude and credibility, and therefore could be used as impeachment.

During cross-examination defendant admitted he had suffered the misdemeanor conviction in 2009. He said he legally owned the gun and it was registered in his name. Defendant also conceded flash bang devices can be dangerous for people who do not know how to use them.

The jury found defendant not guilty on count 1 (possession for sale of cocaine), but guilty of the lesser included offense of possession. The jury also found defendant guilty as charged on counts 2, 3 and 4 (possession of a destructive device, possession of an explosive, and transportation of cocaine).

At the sentencing hearing, the court denied probation and found mitigating factors outweighed aggravating factors given the nature of the offenses and the fact defendant lacked any substantial criminal history. The court deemed count 4 the base count and imposed the low term of three years in state prison. The court imposed and stayed a two-year midterm on each of counts 1 and 3. The court imposed a concurrent two-year midterm on count 2. Defendant was awarded 94 days of custody credits, and was ordered to pay various fines and fees.

This appeal followed. On January 8, 2014, defendant was granted leave to file a supplemental brief.

## DISCUSSION

**1. Prejudicial Instructional Error Requires Reversal of Defendant's Conviction on Count 3**

Defendant contends his convictions on both counts 2 and 3 for possession of a single flash bang device are against the law and unconstitutional, and further, that the trial court committed prejudicial instructional error equivalent to directing a guilty verdict against him. Respondent concedes the two counts were alternate theories of culpability for possession of a single device, but that reversal of the conviction on count 3 for instructional error cures any prejudice to defendant. Respondent contends substantial evidence supports the conviction on count 2 which should be affirmed. We reverse the conviction on count 3 because the court prejudicially erred in instructing the jury on count 3, but we affirm the conviction on count 2 for possession of a destructive device because any potential instructional error on that count was harmless.

Both counts 2 and 3 were based on defendant's possession of the one flash bang device found during the search of his home. In count 2, defendant was charged with a violation of Penal Code section 18710, subdivision (a), which provides, in relevant part: "Except as provided by this chapter, any person . . . who, within this state, possesses any destructive device . . . is guilty of a public offense." The phrase "destructive device" is defined in section 16460, and includes any of the following weapons: "Any bomb, grenade, explosive missile, or similar device or any launching device therefor."**3** A flash

_____

**3** The full text of Penal Code section 16460 is as follows: "(a) As used in Sections 16510, 16520, and 16780, and in Chapter 1 (commencing with Section 18710) of Division 5 of Title 2, 'destructive device' includes any of the following weapons: [¶] (1) Any projectile containing any explosive or incendiary material or any other chemical substance, including, but not limited to, that which is commonly known as tracer or incendiary ammunition, except tracer ammunition manufactured for use in shotguns. [¶] (2) Any bomb, grenade, explosive missile, or similar device or any launching device therefor. [¶] (3) Any weapon of a caliber greater than 0.60 caliber which fires fixed

6

bang device or diversionary device is not expressly enumerated in the definition of destructive device.

In count 3, defendant was charged with a violation of Health and Safety Code section 12305, which provides: "Every person not in the lawful possession of an explosive who knowingly has any explosive in his possession is guilty of a felony." Health and Safety Code section 12000 defines the term "explosive," in relevant part, as follows: "For the purposes of this part, 'explosives' means any substance, or combination of substances, the primary or common purpose of which is detonation or rapid combustion, and which is capable of a relatively instantaneous or rapid release of gas and heat, or any substance, the primary purpose of which, when combined with others, is to form a substance capable of a relatively instantaneous or rapid release of gas and heat." The statute then enumerates an extensive list of substances as qualifying explosives within the meaning of the statute such as dynamite, nitroglycerine and other similar substances. A flash bang device or diversionary device is not one of the items specifically enumerated. Subdivision (f) of section 12000 provides, "[f]or the purposes

---

ammunition, or any ammunition therefor, other than a shotgun (smooth or rifled bore) conforming to the definition of a 'destructive device' found in subsection (b) of Section 479.11 of Title 27 of the Code of Federal Regulations, shotgun ammunition (single projectile or shot), antique rifle, or an antique cannon. [¶] (4) Any rocket, rocket-propelled projectile, or similar device of a diameter greater than 0.60 inch, or any launching device therefor, and any rocket, rocket-propelled projectile, or similar device containing any explosive or incendiary material or any other chemical substance, other than the propellant for that device, except those devices as are designed primarily for emergency or distress signaling purposes. [¶] (5) Any breakable container that contains a flammable liquid with a flashpoint of 150 degrees Fahrenheit or less and has a wick or similar device capable of being ignited, other than a device which is commercially manufactured primarily for the purpose of illumination. [¶] (6) Any sealed device containing dry ice ($CO_2$) or other chemically reactive substances assembled for the purpose of causing an explosion by a chemical reaction. [¶] (b) A bullet containing or carrying an explosive agent is not a destructive device as that term is used in subdivision (a)."

7

of this part, *'explosives' does not include any destructive device*, as defined in Section 16460 of the Penal Code." (Italics added.)[4]

### a. The instructions as to count 3

The court correctly instructed the jury as to the elements of possession of an explosive in violation of Health and Safety Code section 12305 by using a modified version of CALJIC No. 12.55. However, as we explain, the instructions defining the term "explosive," while tracking in part the statutory definition, were improperly modified, incomplete and misleading.

The court instructed as follows: "An explosive means any substance, or combination of substances, the primary or common purpose of which is detonation or rapid combustion, and which is capable of a relatively instantaneous or rapid release of gas and heat, or any substance, the primary purpose of which, when combined with others, is to form a substance capable of a relatively instantaneous or rapid release of gas and heat." This portion of the instruction, taken directly from Health and Safety Code section 12000, was proper. "The language of a statute defining a crime or defense is generally an appropriate and desirable basis for an instruction, and is ordinarily sufficient when the defendant fails to request amplification. If the jury would have no difficulty in understanding the statute without guidance, the court need do no more than instruct in statutory language." (*People v. Poggi* (1988) 45 Cal.3d 306, 327.)

However, the court modified the instruction by including the following additional language: "Explosive includes, but is not limited to [a] flashbang device." Further, the jury was not given any instruction advising, in accordance with subdivision (f) of Health and Safety Code section 12000, that an explosive does *not* include any device qualifying as a "destructive device" under Penal Code section 16460.

Defendant contends, and respondent concedes, the additional language directing that a flash bang device is an explosive should not have been given, and that the failure to

---

[4] The definition of "explosive" as set forth in Health and Safety Code section 12000 is also set forth in Penal Code section 16510.

8

instruct with the language of Health and Safety Code section 12000, subdivision (f), compounded the error. We agree.

"It is settled that, *even in the absence of a request*, a trial court must instruct on general principles of law that are commonly or closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1047, italics added; accord, *People v. Cummings* (1993) 4 Cal.4th 1233, 1311.) " '[I]t is the trial court's duty to see that the jurors are adequately informed on the law governing all elements of the case to the extent necessary to enable them to perform their function.' [Citation.]" (*People v. Miller* (1999) 69 Cal.App.4th 190, 207 (*Miller*).) Further, " 'the trial court has a *sua sponte* duty to give explanatory instructions even in the absence of a request when the terms in an instruction "have a 'technical meaning peculiar to the law.' " [Citations.]' [Citation.]" (*Ibid.*; accord, *People v. Failla* (1966) 64 Cal.2d 560, 565, and 5 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Trial, § 707, p. 1088 ["a word of technical or specialized meaning that is used in the statutory definition of an offense should be defined or explained, because this usually constitutes an element of the offense"].)

While the word "explosive" may be readily understood in a general sense, it has a technical meaning specifically defined by criminal statute. A defendant is guilty of being in violation of Health and Safety Code section 12305 *only* if he or she is in possession of an "explosive" within the meaning of the statutory scheme. As such, the term was an element of the charged offense. Therefore, it was the court's duty, even if not specifically requested by defendant, to properly instruct the jury as to the statutory definition of "explosive" so the jury could decide whether the flash bang device fit the statutory definition.[5] (See *Miller*, *supra*, 69 Cal.App.4th at p. 208 [court was required to

---

[5] While the record is not entirely clear, there was some discussion on the record indicating the court and counsel were attempting to properly define the terms, but no specific discussion regarding the modification is reflected.

instruct jury as to proper definition of phrase "dangerous fireworks" which was defined by statute and element of offense of unlawful possession].)

Had a flash bang device been specifically identified under Health and Safety Code section 12000 as an explosive, it would have been proper for the court to give the modification. (See *People v. Dimitrov* (1995) 33 Cal.App.4th 18, 25-26 (*Dimitrov*) [because "bomb" was expressly listed as a type of destructive device in Penal Code section 12301 (predecessor statute to section 16460), it was proper for court to instruct that a pipe bomb is a destructive device]; see also bench notes to CALCRIM No. 2571 (rev. 2012) (2014 ed.) p. 433 ["*If the case involves a specific device listed* in Health and Safety Code section 12000 or Penal Code section 16460, the court may instead give the bracketed sentence stating that the listed item 'is an explosive' or 'is a destructive device.' "], italics added.)

However, a flash bang device is *not* one of the enumerated substances or devices in the statutory definition. The court's instruction directing the jury that the flash bang device was an explosive therefore improperly removed an element of the offense from the jury's consideration. The error was compounded by the omission of an instruction explaining that, by statutory definition, an explosive cannot also be a "destructive device" within the definition of Penal Code section 16460. The modified instruction constituted error under both the California and United States Constitutions. (*People v. Flood* (1998) 18 Cal.4th 470, 482, 492 (*Flood*).)

In *Flood*, the defendant was charged with a violation of Vehicle Code section 2800.3, evading a pursuing peace officer. (18 Cal.4th at pp. 475-476.) The statutory elements of the offense required the prosecution to prove, among other things, that the defendant was attempting to elude a vehicle operated by a "peace officer" as defined in the Penal Code. (*Ibid.*) The trial court did not give an instruction defining the term "peace officer" as set forth in the Penal Code, but instead, instructed the jury that the two police officers involved in the pursuit were in fact peace officers. (*Id.* at p. 479.) The Supreme Court explained, "[i]n essence, the trial court directed a finding, or a 'partial verdict,' for the prosecution on that particular aspect of the crime. Therefore, it is

10

clear under prior decisions that the peace officer instruction violated defendant's due process rights under the United States Constitution." (*Id*. at p. 492; see also *People v. Figueroa* (1986) 41 Cal.3d 714, 724 ["The prohibition against directed verdicts 'includes perforce situations in which the judge's instructions fall short of directing a guilty verdict but which nevertheless have the effect of so doing by eliminating other relevant considerations if the jury finds one fact to be true.' "].)

The question then becomes whether the instructional error was harmless. (*Flood*, *supra*, 18 Cal.4th at pp. 489-490, 502-503 [rejecting argument that instructional error omitting an element of the offense, or raising an improper presumption or directing a finding or partial verdict on an element is structural error requiring automatic reversal].) In *Flood*, the error was found to be harmless beyond a reasonable doubt because it was undisputed the evidence had been uncontroverted at trial that the two police officers involved in the pursuit were employed as peace officers at the time. (*Id*. at pp. 476-477, 503-504.)

However here, there was disputed evidence in the record as to the nature of the flash bang device, including the manner in which it detonates, its intended purpose, its component parts, and whether that evidence more accurately fit, or fit at all, the definition of a destructive device, or the definition of an explosive. Moreover, the jury was not instructed that if it found the device fit the definition of a destructive device, by law, it could not also be an explosive. To the contrary, the jury was directed that a flash bang qualified as an explosive. And defendant conceded it was in his possession. On such a record, we cannot say, beyond a reasonable doubt, the improper jury instructions did not contribute to the verdict. (*Flood*, *supra*, 18 Cal.4th at p. 494, citing *Chapman v. California* (1967) 386 U.S. 18, 24.) Therefore, defendant's conviction on count 3 must be reversed.

### b.      The instructions as to count 2

The court correctly instructed the jury as to the elements of possession of a destructive device in violation of Penal Code section 18710 by using a modified version of CALJIC No. 12.55. The modification defining the phrase "destructive device"

included relevant portions of section 16460, the statute that defines the term for purposes of determining whether section 18710 has been violated. Specifically, the jury was instructed with definitional language inserted from section 16460 that "[a] destructive device includes any bomb, grenade, or similar device." (§ 16460, subd. (a)(2) ["Any bomb, grenade, explosive missile, or similar device or any launching device therefor"].)

The bench notes to CALCRIM No. 2570, the equivalent of CALJIC No. 12.55, explain that the statutory definition of "destructive device," *or the relevant portion thereof*, should be inserted into the instruction or given in a separate instruction. "Give the bracketed definition of 'destructive device,' inserting *the appropriate definition* from Penal Code section 16460, unless the court has already given the definition in other instructions. In such cases, the court may give the bracketed sentence stating that the term is defined elsewhere." (Bench notes to CALCRIM No. 2570 (rev. 2012) (2014 ed.) p. 430, italics added; accord, *Dimitrov*, *supra*, 33 Cal.App.4th at pp. 25-26.)

The modified instruction correctly instructed the jury as to the relevant portion of the statutory definition of "destructive device" to guide the jurors' deliberations. During deliberations, the jury requested clarification of the definition of " 'destructive' in relation to the crime" of " 'possession of [a] destructive device.' " The court provided the following answer to the jury: "A bomb, a grenade, or a similar devi[c]e is a devi[c]e carrying an explosive charge, fused to blow up or detonate under certain conditions." The court's answer, approved by both parties, was consistent with the modified instruction for a destructive device (i.e., a bomb) approved in *People v. Morse* (1992) 2 Cal.App.4th 620, 647, footnote 8. (See also *People v. Turnage* (2012) 55 Cal.4th 62, 71 ["a ' "destructive device" ' is broadly defined to cover various explosive and incendiary weapons and materials"].) Substantial evidence supported the court's definition of the term "destructive device." There was extensive testimony from Detective Harris and Mr. Crawley, the Marine Corps officer, that a flash bang device is similar to a grenade (albeit causing far less damage than a high-explosive grenade), is fused to detonate and explode, and upon detonation emits heat and gases producing a flash of light and sound intended to stun and disorient anyone nearby.

12

Defendant contends the prejudicial instruction on the alternate count 3 prevented the jury from reaching a proper verdict on count 2.  We are not persuaded there was *Guiton*[6] error or that the instructional error as to count 3 was so pervasive as to infect the jury's ability to properly consider the correct instruction as to count 2 and to fairly consider the evidence.  Therefore, the conviction on count 2 is affirmed.

## 2.    Defendant's Conviction on Count 4 Must Also Be Reversed

Defendant was convicted in count 4 of the transportation of cocaine in violation of Health and Safety Code section 11352.  Effective January 1, 2014, while this appeal was pending, the Legislature amended section 11352, adding, as pertinent here, subdivision (c) which provides "[f]or purposes of this section, 'transports' means to transport for sale."  (Stats. 2013, ch. 504, § 1.)  In count 1, the jury acquitted defendant of possession of cocaine for sale, and found him guilty *only of possession*.  In his supplemental brief, defendant argues, and respondent concedes, that in light of the amendment of section 11352 clarifying the scope of the conduct criminalized by the statute, defendant's conviction on count 4 must be reversed.  We agree.

It is well established that "absent a saving clause, a criminal defendant is entitled to the benefit of a change in the law during the pendency of his appeal."  (*People v. Babylon* (1985) 39 Cal.3d 719, 722, 725 (*Babylon*) [reversing conviction for violation of statute amended during pendency of appeal because a defendant is entitled to the benefit of an amended statute that "mitigates the punishment" or "decriminalizes the conduct altogether"]; accord, *People v. Rossi* (1976) 18 Cal.3d 295.)  Our Supreme Court explained, "the United States Supreme Court has stated that it is ' "the universal common-law rule that when the legislature repeals a criminal statute or otherwise removes the State's condemnation from conduct deemed criminal, this action requires the dismissal of a pending criminal proceeding charging such conduct.  The rule applies to any such proceeding which, at the time of the supervening legislation, has not yet reached

---

**6**      *People v. Guiton* (1993) 4 Cal.4th 1116.

final disposition in the highest court authorized to review it." ' [Citations.]" (*Babylon*, at pp. 727-728; see also *Bell v. Maryland* (1964) 378 U.S. 226, 230.)

The jury found defendant did not possess any quantity of cocaine, either in his home or his vehicle, for sale. No savings clause was included in the amendments to Health and Safety Code section 11352. (Stats. 2013, ch. 504, § 1.) Therefore, defendant's conviction pursuant to section 11352, which now requires proof of transportation *for purposes of sale*, can no longer be sustained. (*Babylon*, *supra*, 39 Cal.3d at p. 722.) The conviction on count 4 must be reversed and vacated.

**3.     Defendant Has Not Shown Prejudicial Evidentiary Error**

Defendant contends the court committed prejudicial error in admitting, for purposes of impeachment, evidence he sustained a prior misdemeanor conviction for carrying a loaded firearm in violation of Penal Code section 12031. Respondent argues the contention was forfeited by failure to object, and that in any event, it was proper impeachment as the offense is one of moral turpitude. We find no prejudicial evidentiary error.

First, we reject respondent's claim of forfeiture. When the issue was first raised by the prosecution at the prospect of defendant testifying, the court and counsel plainly had a conversation on the record about whether the prior conviction should be admitted, whether it constituted a crime of moral turpitude, whether it was relevant to credibility, whether it would be too prejudicial, and whether it was improper "prior bad acts" evidence. The court's initial ruling was to exclude the conviction, explaining "depending on what [defendant] testifies, you can always ask to renew it. But at this point in time, I'm inclined to keep it out."

After defendant testified but before cross-examination, the prosecutor renewed his request stating that defendant, on direct, repeatedly told the jury he was being completely honest with them and telling them the truth. The prosecutor argued he should therefore be allowed to ask defendant questions bearing on why the jury should not believe him. Defense counsel argued he was "stick[ing] by" the same arguments made during the prior discussion of the evidence, and emphasized the conviction had minimal bearing on moral

14

turpitude. The court explained that based on the testimony elicited during direct, the court believed reversal of its earlier ruling was appropriate and that the conviction should be admitted because defendant was "not entitled to hide under a false aura of veracity." There is no basis, on this record, to find forfeiture of the objection.

A trial court is vested with broad discretion in determining the admissibility of evidence. (*People v. Lewis* (2001) 26 Cal.4th 334, 374-375.) Under *People v. Wheeler* (1992) 4 Cal.4th 284, evidence of past conduct amounting to a misdemeanor that bears on a witness's veracity is relevant and admissible for purposes of impeachment, subject to the trial court's exercise of discretion under Evidence Code section 352. "A trial court may only exclude relevant evidence when 'its probative value is substantially outweighed' by the risk of undue prejudice. (Evid. Code, § 352.) ' "A trial court's exercise of discretion will not be disturbed unless it appears that the resulting injury is sufficiently grave to manifest a miscarriage of justice. [Citation.] In other words, discretion is abused only if the court exceeds the bounds of reason, all of the circumstances being considered. [Citation.]' [Citation.]" (*People v. Chavez* (2000) 84 Cal.App.4th 25, 30.)

Defendant contends the court abused its discretion in admitting the impeachment evidence pursuant to Evidence Code section 352. More specifically, defendant contends the court failed to make any assessment of the least adjudicated elements of the offense of carrying a loaded firearm to determine whether it involves moral turpitude, and therefore failed to make the proper threshold inquiry as to relevance. (See *People v. Collins* (1986) 42 Cal.3d 378, 390 [whether a conviction for a given offense involves moral turpitude "is a question of law; its answer depends on the elements of each crime in the abstract, rather than the underlying facts of the earlier prosecutions"], and *People v. Castro* (1985) 38 Cal.3d 301, 317 [a "prior conviction should only be admissible for impeachment if the least adjudicated elements of the conviction necessarily involve moral turpitude"].)

The parties have not cited us to any case specifically holding that a misdemeanor conviction for carrying a loaded firearm pursuant to Penal Code section 12031 is a crime

15

involving moral turpitude. Our research has not disclosed any. In *People v. Robinson* (2005) 37 Cal.4th 592, the Supreme Court discussed the issue relative to a similar statute for carrying a *concealed* firearm. There, the defendant challenged the trial court's exclusion of proffered impeachment against two prosecution witnesses consisting of prior misdemeanor convictions for carrying a concealed handgun. (*Robinson,* at pp. 624-626.) Our Supreme Court agreed with the defendant that the misdemeanor convictions "reflected a crime of moral turpitude and therefore were relevant to the witnesses' honesty and veracity." (*Id.* at p. 626.) But, *Robinson* upheld the trial court's exclusion of the prior convictions, relying on the broad discretion vested in trial courts under Evidence Code section 352 regarding the admissibility of evidence and the failure by the defendant to show any abuse of that discretion. (*Robinson,* at p. 626.)

We need not decide whether a misdemeanor conviction under Penal Code section 12031 for carrying a loaded firearm is a crime of moral turpitude because defendant has not shown any prejudice arising from the admission of the evidence.

In cross-examining defendant, the prosecutor did not belabor the point, but rather, asked a question about the prior conviction that defendant answered succinctly, acknowledging the conviction and stating it involved a firearm registered in his name which he legally owned. The bulk of the prosecutor's cross-examination of defendant thereafter focused on defendant's drug use, explanations for why he had baggies and scales in his possession if he was not selling drugs, and why he had not immediately returned the flash bang device after he found it in his footlocker. On direct, defendant had already conceded possession of the flash bang device, the guns and the drugs, but vigorously denied being a drug dealer. The jury found in defendant's favor on the main issue in dispute, i.e., possession of illegal drugs *for sale*. Therefore, to the extent the jury was influenced at all by the admission of defendant's prior misdemeanor conviction, there is no evidence it caused any prejudice to defendant as the jury found in favor of defendant on that issue. There is no evidence the admission caused the jury to unfairly discredit defendant's testimony. While errors of this type are normally judged under the applicable standard of prejudice for state law error pursuant to *People v. Watson* (1956)

46 Cal.2d 818, 836, the record here shows that any error by the court in admitting the prior conviction was harmless beyond a reasonable doubt.  (See *People v. Cudjo* (1993) 6 Cal.4th 585, 611-612.)

## DISPOSITION

The judgment of conviction is reversed in the following respects:  the guilty verdicts on count 3, possession of an explosive (Health & Saf. Code, § 12305), and on count 4, transportation of cocaine (§ 11352, subd. (a)), are reversed and vacated.  The judgment of conviction is otherwise affirmed in all other respects.  The superior court is directed to prepare a modified abstract of judgment and transmit same forthwith to the Department of Corrections and Rehabilitation.

GRIMES, J.

We concur:

BIGELOW, P. J.

FLIER, J.